**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THOMAS KOMOROWSKI, M.D., et al., | |
| Plaintiffs, | Civil Action No. 20-10440 (MAS) (DEA) |
| v. | **MEMORANDUM OPINION**<br>**FILED UNDER TEMPORARY SEAL** |
| CASTRO & CO., LLC, et al., | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Castro & Co., LLC ("Castro & Co."), and John Anthony Castro's ("Mr. Castro") (collectively, "Defendants") Motion to Dismiss Plaintiffs Thomas Komorowski, M.D. ("Dr. Komorowski"), and Kristine Komorowski's ("Mrs. Komorowski") (collectively, "Plaintiffs") Complaint for improper venue or, alternatively, for failure to state a claim. (ECF No. 6.) Plaintiffs opposed Defendants' Motion and filed a Cross-Motion for Leave to Amend the Complaint. (ECF No. 10.) Defendants replied to Plaintiffs' opposition and opposed Plaintiffs' Cross-Motion. (ECF No. 11.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendants' Motion is denied and Plaintiffs' Cross-Motion is granted.

**I.    BACKGROUND**

This matter arises out of Defendants' alleged unauthorized filing of Plaintiffs' tax returns. Dr. Komorowski is a cardiologist who resides with his wife, Mrs. Komorowski, in New Jersey. (Compl. ¶ 6, ECF No. 1.) Defendants provide international tax planning services; Mr. Castro is a

resident of Texas and the managing partner of Castro & Co., a Wyoming corporation that maintains its principal place of business in Texas. (Mr. Castro Decl. ¶¶ 3–6, ECF No. 6-3.)

### A.    Plaintiffs' Allegations

In January 2019, the parties began discussing the possibility of Defendants handling Plaintiffs' 2018 federal and state income tax returns. (Compl. ¶ 13.) Plaintiffs allege that a few months thereafter, Dr. Komorowski provided Defendants with Plaintiffs' tax information for purposes of obtaining a service proposal. (*Id.* ¶ 14.) After further discussions, Mr. Castro sent Dr. Komorowski a proposed "contractual engagement letter" dated July 8, 2019, which reflected a proposed $90,000 contingency fee arrangement. (*See id.* ¶¶ 15–18; *id.* at *18–19.)[1] Plaintiffs did not sign the letter. (Compl. ¶ 20.) Instead, "Dr. Komorowski reached out to Mr. Castro to ask for changes to[,] and questions about[,] the proposed engagement letter." (*Id.* ¶ 21.) After Mr. Castro sent Dr. Komorowski a signed amended letter dated July 29, 2019, Dr. Komorowski sent Mr. Castro back an unsigned "updated proposed engagement letter" on August 13, 2019.[2] (*Id.* ¶¶ 22–23.) Mr. Castro's July 29, 2019 letter provided that the parties "have all agreed that the federal and local courts in New Jersey shall have exclusive jurisdiction over each of [them] for the purpose of handling any dispute." (*Id.* at *21–22.)

On August 22, 2019, Mr. Castro sent Dr. Komorowski e-mail correspondence in which Mr. Castro wrote, in relevant part:

> Because we had agreed on the substance of the engagement and were simply working out the details of the scope of indemnity, we moved forward with your case in good faith given the deadlines on making certain elections to save you a substantial amount in taxes. . . .

---

[1] Page numbers preceded by an asterisk refer to the page number on the ECF header.

[2] A copy of Plaintiffs' August 13, 2019 letter does not appear to have been included in the record.

When you get a chance, please confirm your intent to proceed so we can respond to the IRS with at least implied power of attorney. . . .

If we don't receive a response, we will proceed on the basis that there's no objection so we can preserve your refund claim. . . .

(*Id.* at \*29.) Dr. Komorowski responded the next day, stating that Plaintiffs neither agreed to Defendants' terms nor signed any proposed engagement letter. (*Id.* ¶ 29; *id.* at \*32.)

Sometime in September 2019, Dr. Komorowski learned through his accountant that Defendants filed Plaintiffs' 2018 tax returns. (Compl. ¶ 30.) "[T]he IRS refunded an overpayment of $202,423.34 and interest of $4,632.74, totaling $207,056.08, which was direct deposited into an account owned by Mr. Castro." (*Id.*) Shortly thereafter, Dr. Komorowski sent Mr. Castro correspondence in which he, among other things, asserted that he never authorized Defendants to file Plaintiffs' 2018 tax returns and instructed Defendants to return the tax refund back to the IRS. (*Id.* ¶¶ 34–38.) Ultimately, Mr. Castro sent Dr. Komorowski the tax refund minus the $90,000 contingency fee. (*Id.* ¶ 39.)

**B.    Procedural History**

On August 13, 2020, Plaintiffs filed a three-count action against Defendants. (*See generally* Compl.) Count One seeks declaratory relief that (1) the parties did not execute an enforceable contract and (2) Plaintiffs' 2018 tax returns were filed without their authorization. (*Id.* ¶¶ 40–41.) Count Two asserts a claim for conversion and Count Three asserts a claim under the New Jersey Consumer Fraud Act ("NJCFA"). (*Id.* ¶¶ 42–54.) Defendants moved to dismiss on October 7, 2020. (*See* Defs.' Moving Br., ECF No. 6.)

On November 30, 2020, Plaintiffs opposed Defendants' Motion and cross-moved to amend their Complaint. (ECF No. 10.) In addition to the above-stated factual allegations, Plaintiffs' Proposed Amended Complaint alleges that after filing this action, Defendants began posting

3

"bot-created negative reviews" on Dr. Komorowki's Google business site. (Proposed Am. Compl. ¶¶ 6, 49–79, ECF No. 10-6.) Based on the additional allegation, the Proposed Amended Complaint adds Ocean Heart Group LLC ("Ocean Heart")—Dr. Komorowki's business—as an additional party and asserts a fourth claim for tortious interference with a prospective business advantage. (*Id.* ¶¶ 95–100.) On the same day Plaintiffs filed their Cross-Motion, Defendants filed a brief that replied to Plaintiffs' opposition and opposed Plaintiffs' Cross-Motion. (ECF No. 11.)

## II.    **DISCUSSION**

Defendants primarily argue that Plaintiffs' claims should be dismissed for improper venue because all substantial events giving rise to Plaintiffs' claims occurred in Texas. (Defs.' Moving Br. 5–13, ECF No. 6; Defs.' Reply/Opp'n Br. 4–11, ECF No. 11.) Defendants also argue that Mr. Castro should be dismissed from this action because Plaintiffs have not alleged that Mr. Castro can be held liable for Castro & Co.'s corporate actions. (Defs.' Moving Br. 13–17.) As to Plaintiffs' NJCFA claim, Defendants argue that claim should be dismissed because Plaintiffs have not demonstrated that they served the New Jersey Attorney General. (Defs.' Moving Br. 17–18; Defs.' Reply/Opp'n Br. 9.) Finally, Defendants argue that Plaintiffs' Cross-Motion to Amend should be denied as futile. (Defs.' Reply/Opp'n Br. 1.) The Court addresses each argument in turn.

### A.    **Venue**

Rule 12(b)(3) permits a court to dismiss a complaint, or a count therein, for improper venue. Section 1391, in turn, provides the criteria for determining where venue is appropriate. 28 U.S.C. § 1391. Under Section 1391, venue is proper in a judicial district where: (1) any defendant resides, if all defendants reside in the same state; (2) a "substantial part of the events or omissions giving rise to the claim occurred"; or (3) the defendant is subject to the court's personal jurisdiction, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b)(1)-(3). A

court considering a Rule 12(b)(3) motion must accept the allegations of the complaint as true unless the allegations are contradicted by the defendant. *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012) (citation omitted). The moving party bears the burden of establishing improper venue. *Id.* at 160 (citation omitted).

Here, Plaintiffs assert that venue is proper in the District of New Jersey under Section 1391(b)(2)'s substantial part of events test. (*See* Proposed Am. Compl. ¶ 18.) In addition, and despite seeking a declaratory judgment that there is no enforceable agreement between the parties, Plaintiffs assert that "[i]ndeed, the proposed engagement letter that Castro prepared stipulates that New Jersey law governs the parties' relationship and selects New Jersey federal and local courts as the fora for any disputes between the parties." (*Id.*)

In moving to dismiss, Defendants argue that venue is improper in this District because all substantial events giving rise to each of Plaintiffs' claims occurred in Texas. (Defs.' Moving Br. 8–13; Defs.' Reply/Opp'n Br. 7–11.) Moreover, relying on *Atlantic Marine*, Defendants also appear to argue that one of the three categories listed in Section 1391(b) must be met even though the purported contract contains a New Jersey forum selection clause. (*See* Defs.' Moving Br. 7 (citing *Atlantic Marine Constr. v. U.S. Dist. Ct. for Western Dist. of Texas*, 571 U.S. 49 (2013)).)

At this time, the Court declines to dismiss Plaintiffs' claims for improper venue. Defendants do not contest that the purported contract includes a New Jersey forum selection clause. (*See id.* at 7 ("The Complaint further points to the New Jersey forum selection clause appearing in the contract that Plaintiffs seek to declare as unenforceable."); *see also* Compl. *39 (in response to Dr. Komorowski's contention that Defendants were not authorized to file Plaintiffs' tax returns, Mr. Castro asserted, in part, "you can commence a civil action against our firm in New Jersey state court to invalidate the contract we contend exists.").) In that regard, the last version of

the purported contract that is part of the record—the July 29, 2019 contractual engagement letter—provides that the parties "have all agreed that the federal and local courts in New Jersey shall have exclusive jurisdiction over each of [them] for the purpose of handling any dispute."[3] (Compl. *21–22.) Thus, if the parties did, in fact, execute an enforceable contract as Defendants contend, then Plaintiffs' claims would properly be before this Court pursuant to the forum selection clause therein. Because the parties primarily dispute whether an enforceable contract exists, however, the Court finds it more prudent to reserve consideration of Defendants' improper venue argument until a later stage in the proceedings.[4]

The Court also notes that Defendants' reliance on *Atlantic Marine* is misplaced. Defendants cite *Atlantic Marine* to seemingly argue that Plaintiffs' claims must fall within one of the categories listed in Section 1391(b), irrespective of the purported contract's New Jersey forum selection clause. (*See* Defs.' Moving Br. 7.) In support, Defendants point to two sentences in *Atlantic Marine* where the Supreme Court asserted: (1) "whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories listed in [Section] 1391(b)"; and (2) "[t]he conclusion that venue is proper so long as the requirements of [Section] 1391(b) are met, irrespective of any forum-selection clause, also follows from our prior decisions construing the federal venue statutes." (*Id.*) From this language, Defendants posit that "Plaintiffs' reliance on the forum selection clause appearing in the disputed contract as a basis to

---

[3] As noted, a copy of Plaintiffs' August 13, 2019 letter does not appear to part of the record. The parties do not dispute, however, that the final version of the alleged agreement included a New Jersey forum selection clause.

[4] Otherwise, it may be the case that some claims are dismissed only to be refiled in this District if an enforceable contract is ultimately found to exist.

establish venue in this District must be rejected." (*Id.*) Another court, however, recently rejected a similar argument.

In *Howard*, the court rejected the defendants' argument that under *Atlantic Marine*, "the Court must conduct an independent venue analysis under [Section] 1391(b), irrespective of the terms of a forum selection clause, and dismiss or transfer the case if venue does not lie under the federal venue statute." *Howmedica Costeonics v. Howard*, No. 19-19254, 2020 WL 1102494, at *4 (D.N.J. Jan. 17, 2020), *adopted in Howmedica Costeonics v. Howard*, No. 19-19254, 2020 WL 1082601 (D.N.J. Mar. 5, 2020) (adopting recommendation to deny motion to dismiss for improper venue). In reaching its decision, the *Howard* court "decline[d] to adopt an interpretation of *Atlantic Marine* that would abrogate the widely accepted principle that objections to venue are waivable and 'parties can agree to venue among themselves[.]'" *Howard*, 2020 WL 1102494, at *5 (citations omitted). The court also noted that "under [the] defendants' reading of *Atlantic Marine*, a forum-selection clause would never be valid unless, by chance, the venue specified in the clause happened to satisfy [Section] 1391(b), in which case the forum-selection clause would have been completely unnecessary, a position" that is "untenable, particularly in light of the Supreme Court's admonishment that a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* (internal quotation marks and citations omitted).

The Court agrees with *Howard* and "the line of well-reasoned decisions recognizing that [w]here a defendant has waived its objection to venue, the Court may hear the matter, even though venue would not otherwise be proper under [S]ection 1391." *Id.* (collecting cases). In this case, if a contract is ultimately found to exist, then pursuant to the New Jersey forum selection clause therein the Court may hear Plaintiffs' claims even if they do not fall within one of the categories listed in Section 1391(b). *Id.* But as discussed above, because the parties contest whether an

enforceable contract exists, the Court will reserve consideration of Defendants' improper venue argument until a later stage. For the foregoing reasons, the Court denies Defendants' Motion to Dismiss to the extent it seeks to dismiss Plaintiffs' claims for improper venue.

### B.    Mr. Castro

In their Moving Brief, Defendants argue that Mr. Castro should be dismissed from this action because Plaintiffs "fail[ed] to allege any facts that would establish a prima facie claim to pierce [Castro & Co.'s] corporate veil[.]" (Defs.' Moving Br. 17.) In light of Plaintiffs' Proposed Amended Complaint, however, the Court finds this argument moot because of the additional tortious interference claim asserted against Mr. Castro based on the alleged positing of "bot-generated negative reviews" on Ocean Heart's Google business site. Defendants' opposition to Plaintiffs' Cross-Motion notably does not reraise their corporate veil argument as a basis for dismissing Mr. Castro. The Court, therefore, declines to dismiss Mr. Castro from this action.

### C.    NJCFA Claim

Defendants contend that Plaintiffs' NJCFA claim should be dismissed as a matter of law because Plaintiffs have not demonstrated that they served the New Jersey Attorney General under N.J. Stat. Ann. § 56:8-20. (Defs.' Moving Br. 17–18.) Plaintiffs indicate that they ultimately served the Attorney General on November 6, 2020. (Pl.'s Opp'n/Cross-Motion 17, ECF No. 10-5.)

The Court declines to dismiss Plaintiffs' NJCFA claim. The statute cited by Defendants does not mandate dismissal for failure to serve a complaint, much less for untimely service of a complaint. *See* N.J. Stat. Ann. § 56:8-20.[5] Nor do Defendants cite any case law or legal authority

---

[5] N.J. Stat. Ann. § 56:8-20 provides: "Any party to an action asserting a claim . . . based upon violation of this act . . . shall mail a copy of the initial or responsive pleading containing the claim . . . to the Attorney General within 10 days after the filing of such pleading with the court. Upon application to the court wherein the matter is pending, the Attorney General shall be permitted to intervene or to appear in any status appropriate to the matter."

to support their argument that dismissal is warranted. Instead, Defendants cite two cases to assert that the "purpose of [N.J. Stat. Ann. § 56:8-20] is to afford the Attorney General an opportunity to intervene in a private [NJ]CFA suit." (Defs.' Moving Br. 17–18.) On these facts, the Court will permit Plaintiffs' NJCFA claim to proceed. The Court will provide Plaintiffs a date by which to file the proper proof of service.

>    **D.    Leave to Amend**

A Court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant leave to amend pleadings, however, is within the sound discretion of the Court. *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (citation omitted). "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

Here, the Proposed Amended Complaint adds (1) Ocean Heart as a Plaintiff and (2) a tortious interference claim based on allegations that Defendants began posting "bot-created negative reviews" on Ocean Heart's Google business site after Plaintiffs filed this action. (*See* Proposed Am. Compl. ¶¶ 6, 49–79, 95–100.) For their part, Defendants argue that amendment would be futile because Plaintiffs' allegations do not cure the venue deficiencies. (*See generally* Defs.' Reply/Opp'n Br.) Having already reserved judgment on the venue issue, however, the Court will grant Plaintiffs' Cross-Motion to Amend.

## III.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is denied and Plaintiffs' Cross-Motion to Amend is granted. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE